IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Cynthia Carpenter-Barker, as Next Friend of Megan Carpenter, | ) ) ) |
| Plaintiff, | ) Case No. 1:15-CV-41 ) |
| vs. | ) ) |
| Ohio Department of Medicaid, et al., | ) ) |
| Defendants. | ) |

O R D E R

This matter is before the Court on the motion for judgment on the pleadings filed by the Ohio Department of Medicaid and John McCarthy, the Director of the Ohio Department of Medicaid. Doc. No. 36. For the reasons that follow, Defendants' motion for judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART**.

I. Background

Megan Carpenter is 28 years old and suffers from a number of severe disabilities. According to the complaint, Megan has encephalopathy, not otherwise specified, intractable epilepsy, autism, profound mental retardation, cognitive impairment, hypothyroidism, not otherwise specified, generalized muscle weakness, profound sensorincural hearing loss (i.e., deafness), impaired mobility, ataxia, and sub-cortical myoclonus. First Amended Complaint ¶ 15. Megan is unable to care for herself because of her impairments and requires, according to the complaint, as well as her treating physician, 24-hour-a-day nursing care. Id.

Sub-cortical myoclonus is the most serious of Megan's many disorders. Id. ¶ 22. Sub-cortical myoclonus is a type of seizure characterized by muscle twitching that can occur in any muscle group. If not identified and treated properly, a sub-cortical myoclonus episode can progress and lead to a generalized seizure that can be life-threatening. Id.; Franz Aff. (Doc. No. 6-1) ¶¶ 11-14. Megan's myoclonic and seizure activities are unpredictable and can occur even when she is sleeping. First Amended Complaint ¶ 24; Franz. Aff. ¶ 13. Dr. David Franz, Megan's treating physician, has ordered round-the-clock nursing care for Megan in order to properly treat her sub-cortical myoclonus. According to Plaintiffs and Dr. Franz, nursing judgment is required to monitor and assess Megan for myoclonic or other seizure activity and to determine the appropriate intervention, including deciding what dose and combination of medications to administer. First Amended Complaint ¶¶ 24-32; Franz Aff. ¶ 18.

Megan is eligible for and receives services from the Ohio Department of Medicaid ("ODM"). Defendant John McCarthy is the Director of ODM. Megan participates in Medicaid's Individual Options Waiver program ("the I/O Program"). The I/O program "provides home and community-based services to people with developmental disabilities who would otherwise require institutionalization." First Amended Complaint ¶ 18-19.

The dispute in this case concerns what has seemingly become an annual ritual concerning Megan's Medicaid services. Megan has been and is currently approved for 128 hours per week of private duty nursing ("PDN") services through the Medicaid State Plan to assist with and treat, among other things, her sub-cortical myoclonus. She also receives 62 hours per week of personal care services through the I/O Program. Every year, however, ODM proposes to reduce Megan's PDN services. The complaint describes a

pattern in which ODM notifies Megan's mother, Cynthia Carpenter-Baker, that it intends to reduce Megan's PDN services for the following year. Mrs. Carpenter-Baker then requests a hearing to contest ODM's proposed action. The state hearing officer sustains ODM's proposed action. Mrs. Carpenter then appeals the hearing officer's decision. The hearing officer's decision is reversed by the administrative appeals board or, as occurred on several occasions, the status quo is otherwise maintained.

To illustrate: In November 2010, ODM proposed to reduce Megan's PDN services from 128 hours per week to 72 hours per week. The basis for the ODM's proposed reduction in PDN hours was that Megan attended a workshop Mondays through Fridays and she did not need skilled nursing services while she was at the workshop. The hearing officer determined, therefore, that Megan's needs could be met with 8 to 12 hours of PDN services per day and that the reduction in hours would not "result in an increase in diseases, dysfunction of a body part or significant pain and discomfort." Doc. No. 6-5, at 3. In the subsequent administrative appeal filed by Mrs. Carpenter-Barker, ODM argued that Megan's medication could be administered by an I/O Waiver aide instead of a nurse. The appeals board, however, agreed with Mrs. Carpenter-Barker that ODM failed to demonstrate that aides were authorized to administer Megan's medications and, if so, whether they should be so authorized given the complexity of Megan's medication regimen. The board, therefore, ordered ODM to rescind its proposal to reduce Megan's PDN hours. First Amended Complaint ¶¶ 43-45; Doc. No. 6-6.

In November 2013, ODM proposed to reduce Megan's PDN services from 128 hours per week to 56 hours per week. Picking up where it left off in 2011, ODM argued that I/O Waiver aides could administer Megan's medications, rendering 128 hours per week of PDN

3

services unnecessary. There were several remands by the appeals board to the hearing officer for a determination whether aides were legally authorized to administer Megan's medications and, if so, whether the County Board of Developmental Disabilities would permit aides to administer her medications. In June 2014, the appeals board issued a decision which ultimately concluded that I/O waiver aides were authorized to administer Megan's medications and, therefore, that ODM's proposal to reduce Megan's PDN services from 128 hours to 56 hours per week was appropriate. The board, however, prohibited ODM from putting the reduction into effect until it certified that the aides had been trained to properly administer Megan's medications. First Amended Complaint ¶¶ 46-56; Doc. No. 6-12. Mrs. Carpenter-Barker appealed that decision to the court of common pleas in July 2014 and shortly thereafter the parties entered into a settlement agreement which left Megan's PDN hours in place. First Amended Complaint ¶ 60-62.

Despite this settlement agreement, ODM moved to quickly to again reduce Megan's PDN hours. In December 2014, ODM notified Mrs. Carpenter-Barker that it again proposed to reduce Megan's PDN services from 128 hours per week to 56 hours per week. Id. ¶ 63. This last notice precipitated the instant lawsuit.

In the meantime, however, Mrs. Carpenter-Barker requested another state hearing to contest the proposed reduction in Megan's PDN services. A hearing was scheduled for January 7, 2015 and ODM agreed to leave Megan's PDN hours in place until the administrative proceedings were completed. Id. ¶¶ 67-68. The hearing was later rescheduled for January 27, 2015. Id. ¶ 70.

While those events were taking place, on January 20, 2015, Mrs. Carpenter-Barker filed a complaint on behalf of Megan in this Court (later amended) asserting three federal

4

causes of action against ODM and Director McCarthy.  Plaintiff's first cause of action arises under 42 U.S.C. § 1983 and alleges a due process violation on the grounds that ODM's December 2014 notice failed to comply with 42 U.S.C. § 1396a because it did not specify a reason for the proposed reduction in Megan's PDN services.  Plaintiff's second and third causes of action arise under the Americans With Disabilities Act ("the ADA"), 42 U.S.C. § 12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 794, et seq., respectively, but are essentially the same claim.  Plaintiff alleges that ODM's proposal to reduce Megan's PDN services risks institutionalizing Megan and, therefore, violates the ADA, the Rehabilitation Act, and implementing regulations, all of which require that public services be provided to disabled persons "in the most integrated setting appropriate to the needs of the qualified individual," i.e., the one that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible."

Plaintiff then filed a motion for a preliminary injunction (Doc. No. 6) to enjoin Defendants from reducing Megan's PDN hours.  ODM later stipulated that it would leave Megan's PDN services in place until the Court issues a final decision on Plaintiff's claims.  Doc. Nos. 12, 20.  Meanwhile, Plaintiff's state hearing took place as scheduled on January 27, but required more than one day to complete.  Before the second day of the hearing could take place, Defendants agreed not to reduce Megan's PDN hours pending the resolution of Plaintiff's federal lawsuit.  Based on that representation, Plaintiff agreed to voluntarily dismiss her state administrative appeal. First Amended Complaint ¶¶ 80-82.

Defendants now move for judgment on the pleadings on Plaintiff's complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  In their motion, Defendants contend that Plaintiff's due process claim concerning the alleged inadequacy of the 2014

5

notice is now moot because the notice concerned Megan's 2015 benefits and 2015 passed without any change in her benefits. Defendants also argue that Plaintiff's ADA and Rehabilitation Act claims are barred under the claim preclusion doctrine. Defendants contend that Plaintiff could have raised her ADA and Rehabilitation Act claims in the state administrative proceedings but failed to do so. Defendants argue further that Plaintiff's dismissal of her administrative appeal constitutes a judgment on the merits which, as a result, forecloses Plaintiff from litigating her federal claims in this lawsuit.

These issues have been fully briefed and are now ready for disposition by the Court.

## II. Standard of Review

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 511–12 (6th Cir. 2001) (citing Mixon v. Ohio, 193 F.3d 389, 399–400 (6th Cir. 1999)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir.2007) (internal citations and quotation marks omitted). The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the claim plausible, i.e., more than merely possible. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). However, "a legal conclusion couched as a factual allegation" need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of

6

action sufficient. Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

III. Analysis

A. Due Process Claim

Defendants first argue that Plaintiff's due process claim concerning the alleged deficient December 2014 notice is moot. Specifically, Defendants argue that Plaintiff limited her due process claim to the December 2014 notice of intent to reduce Megan's benefits in 2015. Defendants argue, therefore, that since 2015 passed without a change in Megan's PDN services, her due process claim is moot. The Court agrees.

Federal courts do not have subject matter jurisdiction to adjudicate moot claims. McPherson v. Michigan High School Athletic Ass'n, Inc., 119 F.3d 453, 458 (6th Cir. 1997). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." Id. In other words, "a case is moot only where no effective relief for the alleged violation can be given." Coalition for Gov't Procurement v. Federal Prison Ind., Inc., 365 F.3d 435, 458 (6th Cir. 2004).

Plaintiff's complaint alleged that the December 2014 notice violated 42 U.S.C. § 1396a, and implementing regulations, by not providing a reason for the proposed reduction in services. First Amended Complaint ¶ 91. Plaintiff is correct that the Medicaid statute requires the state to provide an individual a fair hearing before denying that individual benefits. 42 U.S.C. § 1396a(a)(3). Additionally, the regulations require the notice provided by the state agency to contain, inter alia, the action to be taken, a statement of reasons for the proposed action, and a citation of the regulations that support the action. 42 C.F.R. §§ 431.20(a) - (c). Individuals have a private right of action via 42 § 1983 to enforce

7

Medicaid's procedural requirements. Gean v. Hattaway, 330 F.3d 758, 772-73 (6th Cir. 2003).

Logically, the remedy for a state's violation of the requirement to provide adequate pre-deprivation notice of its intent to reduce an individual's Medicaid benefits would be an order to enjoin the proposed action until the state satisfies its due process obligations or to reinstate the individual's benefits until they are satisfied. Cf. Kimble v. Solomon, 599 F.2d 599, 604 (4th Cir. 1979) (ordering the State of Maryland to reinstate plaintiffs' Medicaid benefits until it provided proper notice of benefits reductions). Here, however, assuming as the Court must that the notice sent to Plaintiff was not in compliance with the regulations, Megan's benefits were not reduced for the year in question. Thus, as Defendants accurately argue, the Court cannot provide any effective relief for the alleged violation. Consequently, Plaintiff's due process claim is moot.[1]

Plaintiff argues that this claim is not moot because the alleged violation falls under the "capable of repetition, yet evading review" doctrine. Additionally, the Court observes that Plaintiff's complaint apparently alleges that ODM's persistent efforts to reduce Megan's PDN hours constitute an ongoing due process violation. First Amended Complaint ¶ 93. As Defendants point out, however, Plaintiff later stipulated that the scope of her due process claim is limited to the adequacy of the 2014 notice. Doc. No. 36, at 33 ¶ 5 ("Ms. Carpenter seeks a declaration from the Court that Defendants did not provide Ms.

---

[1] Additionally, since ODM did not reduce Megan's benefits, the alleged due process violation was arguably harmless. Cf. Gean, 330 F.3d at 773 (holding that plaintiffs failed to show a violation of clearly established law where their medical care services were not diminished even though the state failed to provide adequate notice that it was using plaintiffs' Medicare benefits to offset their prison medical expenses).

Carpenter adequate notice regarding the 2014 reduction of her PDN hours in violation of her due process rights under Section 1983."). The Court concludes, therefore, that Plaintiff's due process claim is now limited to the adequacy of the 2014 notice. To the extent that Plaintiff wants to Court to enjoin ODM to comply with the notice regulations in the future,[2] that claim fails to present a justiciable controversy because it is not reasonably likely to occur that ODM will not comply with the applicable regulations in future proposed actions. City of Los Angeles v. Lyons, 461 U.S. 95, 103-07 (1983).

Accordingly, because Plaintiff's due process claim is moot, Defendants' motion for judgment on the pleadings on this claim is well-taken and is **GRANTED.** This claim is **DISMISSED WITH PREJUDICE.**

### B. ADA and Rehabilitation Act Claims

As already stated, Plaintiff claims that ODM's proposal to reduce Megan's PDN hours risks institutionalizing her in violation of the integration regulations of the ADA and the Rehabilitation Act. Defendants, however, contend that Plaintiff could have and should have raised her federal claims in her state administrative appeal. Defendants argue that Plaintiff then lost these claims pursuant to the claim preclusion doctrine when she voluntarily withdrew her administrative appeal. In response, Plaintiff argues that these claims are not precluded because she was not allowed to assert them in the state proceedings.

A federal court must give a prior state court judgment the same preclusive effect that it would have under the law of the state whose court issued the judgment. Heyliger v. State

---

[2] See Doc. No. 36, at 33 ¶ 6.

9

Univ. & Comm. College Sys. of Tenn., 126 F.3d 849, 851-52 (6th Cir. 1997). Federal courts, however, do not give preclusive effect to state administrative decisions on claims arising under federal discrimination statutes that have not been reviewed by a state court. University of Tenn. v. Elliott, 478 U.S. 788, 796 (1986); Hillman v. Shelby County Gov't, 297 Fed. Appx. 450, 452 (6th Cir. 2008). Although Elliott and Hillman involved discrimination claims arising under Title VII of the Civil Rights Act of 1964, the same principle applies to ADA and Rehabilitation Act claims. Staats v. County of Sawyer, 220 F.3d 511, 514 (7th Cir. 2000).

In this case, assuming without deciding that Plaintiff's voluntary dismissal of her state administrative appeal would otherwise constitute a judgment on the merits in state courts in Ohio, her ADA and Rehabilitation Act claims were never subjected to review by a state court. Consequently, the claim preclusion doctrine does not prohibit Plaintiff from litigating her ADA and Rehabilitation Act claims in this Court.

Accordingly, Defendants' motion for judgment on the pleadings on Plaintiff's ADA and Rehabilitation Act claims is not well-taken and is **DENIED.**

Conclusion

For the reasons stated, Defendants' motion for judgment on the pleadings is **GRANTED IN PART AND DENIED IN PART.**  Defendants' motion is well-taken and is **GRANTED** as to Plaintiff's claim for a due process violation.  That claim is **DISMISSED WITH PREJUDICE.**  Defendants' motion for judgment on the pleadings on Plaintiff's ADA and Rehabilitation Act claims is not well-taken and is **DENIED.**

**IT IS SO ORDERED**

Date May 20, 2016                                                                        s/Sandra S. Beckwith
                                                                                                    Sandra S. Beckwith
                                                                                     Senior United States District Judge